## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**ERICKA BABINEAUX**                                    **CASE NO.  2:21-CV-02172**

**VERSUS**                                                        **JUDGE JAMES D. CAIN, JR.**

**UNITED NATIONAL INSURANCE CO**        **MAGISTRATE JUDGE KAY**

### MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment by Plaintiff, Ericka Babineaux d/b/a EB's Orthotics and Prosthetics" [Doc. 11]. Defendant United National Insurance Company ("UNIC") opposes this motion [Doc. 13.]

Also considered before the Court is "UNIC's Motion for Partial Summary Judgment" [Doc. 14] Plaintiff Ericka Babineaux d/b/a EB's Orthotics and Prosthetics ("Babineaux") opposes this motion [Doc. 16] and UNIC has replied to the opposition [Doc. 17]. As such, these matters are fully briefed and ready for ruling.

### FACTUAL STATEMENT

Ericka Babineaux d/b/a EB's Orthotics and Prosthetics ("Babineaux") was the owner and operator of a business which fabricated custom orthotics and prosthetics and purchased orthotics and prosthetics for resale. Babineaux leased a building located on McNeese Street in Lake Charles to operate her business.

The building was severely damaged by Hurricane Laura. When Hurricane Laura struck, Babineaux had in effect an insurance policy she purchased from UNIC providing

- 1 -

$500,000.00 of coverage for her lost business income and extra expenses in addition to the business personal property losses she suffered.

Babineaux submitted a claim on or around August 27, 2020, and UNIC contacted field adjuster, Donna Holcomb, with Phillips & Associates, to adjust the claim. On September 2, 2020, the adjusted contacted Babineaux and inspected the damages the same day. Ms. Holcomb submitted a report on September 4, 2020, and believed the damages to Babineaux's business personal property would exceed the policy limits. However, Ms. Holcomb also found that the business interruption and extra expenses could not be determined until Babineaux provided documents necessary to calculate those losses.

After receiving the necessary documents in November, Ms. Holcomb provided a second report noting that the loss to Personal Property totaled $108,001.35 and the policy provided coverage in the amount of $60,743.00 for personal property with a 90% coinsurance clause. On December 9, 2020, UNIC adjusted Babineaux's business personal property claim in the about of $108,889.77, less deductible and policy limits for a net claim of $60,743.00.

In March 2021, Babineaux told UNIC that she was waiting on a contractor to provide a quote to convert her home garage into a mobile lab for her business. Babineaux had later provided UNIC with supplemental monthly expenses which included her home phone, internet, and television bills. Babineaux also provided an invoice for her family members to pick up the debris which amounted to $28,000.00 despite the fact that the owner of the building had insurance which covered debris removal.

On April 21, 2021, Babineaux was advised that the policy did not cover construction of her garage into her permanent office. However, UNIC did not deny coverage for Babineaux to relocate her business.

Babineaux now seeks a partial summary judgment finding that coverage exists under the clear and unambiguous terms of UNIC's policy for the extra expenses associated with her attempts to continue her operations at another location after Hurricane Laura.

Babineaux also seeks a partial summary judgement finding UNIC liable under La. R.S. 22:1892 and La. R.S. 22:1973 for penalties, attorney's fees, reasonable costs, and actual damages, with only the amounts to be determined at trial.

UNIC now seeks a partial summary judgment finding that: (1) the insurance policy provided by UNIC to Babineaux does not include costs to construct a new location for her business; (2) even if the policy did provide for such coverage, which is denied, Babineaux did not incur these costs during the period of restoration; and (3) Babineaux is not entitled to penalties and attorney's fees.

<b><u>SUMMARY JUDGMENT STANDARD</u></b>

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court may not grant a motion for summary judgment solely on the grounds that it is unopposed and the moving party must still meet its burden as described above. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995). When the motion is unopposed, however, the court may accept the movant's evidence as undisputed. *Morgan v. Fed. Exp. Corp.*, 114 F.Supp.3d 434, 437 (S.D. Tex. 2015).

## LAW & ANALYSIS

Plaintiff argues that the policy language clearly provides coverage for extra expenses for Babineaux to minimize the suspension of her business and to continue operations at a temporary or replacement location, in this case her garage. Babineaux cites to the language in the policy that states:

3. Additional Coverages

    a. Extra Expenses

    Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

    1) We will pay an Extra Expense to avoid or minimize the "suspension" of business and to continue "operations":
        a) At the described premises; or
        b) At replacement premises or at temporary locations, including:
            1) Relocation expenses; and
            2) Costs to equip and operate the replacement or temporary locations.
    2) We will pay any Extra Expense to minimize the "suspension" of business if you cannot continue "operations."

Doc. 11-2 *Exhibit 1 Certified Policy* pp. 99-100.

Babineaux maintains that under the terms of the policy, UNIC agreed to provide coverage for Extra Expenses to avoid or minimize the "suspension" of Babineaux's business and to continue "operations." Babineaux asserts that there is nothing in this language that would preclude coverage for the Extra Expenses for the garage conversion that Babineaux submitted to UNIC to get her business up and running. As such, Babineaux

- 5 -

argues that UNIC wrongfully denied coverage for the Extra Expenses for the garage conversion and this Court should grant a partial summary judgment finding coverage.

UNIC argues that Louisiana and Federal jurisprudence interpret the extra expense policy provision to cover temporary expenses incurred for continued business operations, not expenses related to a new, permanent location. UNIC cites to a Wisconsin Court of Appeals case, *Thompson v. Threshermen's Mut. Ins. Co.*, 172 Wis. 2d 275, 493 N.W. 2d 734 (Ct. App. 1992). In *Thompson*, the insureds rented a building that housed their supermarket and held a business interruption policy as renters. A fire destroyed the building along with most of the insureds' equipment, fixtures, and goods. The insureds ultimately built their own structure for the supermarket and filed suit against the insurer alleging the costs associated with the building of a new structure was covered by the policy. The trial court ruled that no additional coverage was afforded the plaintiffs who then appealed. The appellate court agreed and found that if the court were to construe such coverage under the Extra Expenses section, the plaintiffs would have obtained ownership of a new building as payoff from their insurance policy. UNIC argues that Louisiana courts have similarly opined "An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Padgett v. Transportation Ins. Co.*, No. 6:21-CV-01086, 2021 WL 2555377 (W.D. La. June 1, 2021) citing *Richard v. Anadarko Petroleum Corp.*, 850 F. 3d 701, 713 (5th Cir. 2017).

UNIC argues that similarly Babineaux leased a property for her business, and it is unreasonable to interpret the policy to contemplate Babineaux's entitlement to construction

of a new building because the one she leased has been damaged. UNIC maintains that the policy issued covers temporary expenses to "[a]void or minimize interruption of business" and an interpretation that would allow the insured to construct a new building space out of a business policy is an absurd result. As such, UNIC argues that Babineaux's motion for summary judgment must fail.

The Louisiana Supreme Court and the Fifth Circuit require that an insurance contract be enforced as written when the wording of the policy is clear and unambiguously expresses the parties' intent. *Louisiana Ins. Guar Ass'n v. Interstate Fire & Cas. Co.,* 93-0911 (La. 1/14/1994) 630 So.2d 759,764; *Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001). However, in the case of ambiguous or contradictory provisions in an insurance policy, the policy must be interpreted in favor of coverage and against the insurer. The Louisiana Supreme Court has set a precedent that insurance policies should be interpreted to effect, not to deny, coverage. *Reynolds v. Select Properties, Ltd.,* 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183. If the language of the policy is subject to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. *Id* at 1183; see also *Supreme Services and Specialty Co. Inc. v Sonny Greer, Inc.*, 2006-1827 (La. 5/22/07) 958 So.2d 634, 639.

In the instant case, the Court finds that an ambiguity in the policy exists. The language of the policy reads "a) **At replacement premises** or at temporary locations…" (emphasis added). The plain language of the policy clearly states that UNIC will pay Extra Expenses to avoid or minimize the "suspension" of business and to continue "operations" at replacement premises. The Court finds that the policy must be interpreted in favor of

coverage. As such, Babineaux has met her burden to find that coverage exists under the terms of UNIC's policy for the Extra Expenses associated with her attempts to continue her operations at another location after Hurricane Laura. Accordingly, the Court finds that the policy provides coverage for Babineaux's expenses to convert her garage to continue her business operations.

Babineaux also seeks a partial summary judgment finding UNIC liable under La. R.S. 22:1892 and La. R.S. 22:1973 for penalties, attorney's fees, reasonable costs, and actual damages, with only the amounts remaining to be determined at trial. Summary judgment is not appropriate when a claim for bad faith penalties depends on factual determinations underlying the reasonableness of the insurers refusal to pay. *Marcelle v. Southern Fidelity Ins. Co.*, 954 F. Supp. 2d 429 (E.D. La. 2013). The inquiry into whether an insurer's refusal to pay is vexatious, thus warranting statutory penalties under Louisiana law is a factual issue.

La. R.S. 22:1892 subjects an insurer to the mandatory imposition of penalties and attorney fees when it is arbitrary and capricious in failing to tender the undisputed amount or make a written offer to settle a claim within thirty days of satisfactory proof of loss, for the collection of such amount. Thus, to prevail under La. R.S. 22:1892, a claimant must establish (1) that the insurer received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period or failed to make a written offer to settle the claim, and (3) that the failure to timely tender a reasonably amount was arbitrary, capricious, or without probable cause. *Bourg v. Safeway Insurance Company of Louisiana*, 2019-0270, (La.App. 1 Cir. 3/5/20), 300 So. 3d 881, 891.

La. R.S. 22:1973 provides that an insurer that breaches its duty of good faith is subject to penalties in an amount not to exceed two times the damages sustained, or five thousand dollars, whichever is greater. Whether or not a refusal to pay is arbitrary, capricious, or without probable cause, as required to impose statutory penalties under Louisiana law depends on the facts known to the insurer at the time of its action. La. R.S. 22:1892(B)(1); La. R.S. 22:1973(A) *Melendez v. Southern Fidelity Insurance Company*, 503 F. Supp. 3d 504 (E.D. La. 2020).

The Court has reviewed the evidence submitted by both parties and finds that there is a genuine issue of material fact for trial regarding bad faith penalties. Accordingly, issue of bad faith penalties under Louisiana Revised Statute 22:1892 and actual damages pursuant to Louisiana Revised Statutes 22:1973 will be deferred to the merits to be presented at the trial of this matter.

## **CONCLUSION**

As detailed hereinabove, the parties strongly dispute the issue of a Business Interruption and/or Extra Expenses claim. The Court finds that there is ambiguity in the policy and notes that the policy extends to "replacement premises or at temporary locations." Accordingly, the Court finds that the policy must be interpreted in favor of coverage. As such, the "Motion for Partial Summary Judgment by Plaintiff, Ericka Babineaux d/b/a EB's Orthotics and Prosthetics" [Doc. 11] will be **GRANTED IN PART** as to this issue.

The Court further finds that summary judgment is not appropriate for the bad faith penalties as it depends on factual determinations regarding the reasonableness of the

insurer's refusal to pay.  As such, the "Motion for Partial Summary Judgment by Plaintiff, Ericka Babineaux d/b/a EB's Orthotics and Prosthetics" [Doc. 11] will be deferred to the merits as to the issue of bad faith penalties under Louisiana Revised Statute 22:1892 and Louisiana Revised Statutes 22:1973.

The Court finds that UNIC has not met its burden to find that: (1) the insurance policy provided by UNIC to Babineaux does not include costs to construct a new location for her business; (2) even if the policy did provide for such coverage, Babineaux did not incur these costs during the period of restoration; and (3) Babineaux is not entitled to penalties and attorney's fees. As such, "UNIC's Motion for Partial Summary Judgment" [Doc. 14] will be **DENIED.**

**THUS DONE AND SIGNED** in Chambers this 21st day of July, 2022.


**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**